UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ARTHULA MILLER, Plaintiff, | ) | |
| v. | ) | No. 1:25-cv-01536-JPH-KMB |
| MARK SEVIER, S. RILEY, Defendants. | ) | |

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT AS TO EXHAUSTION DEFENSE**

Plaintiff Arthula Miller filed this action contending that Defendants deprived him of constitutionally adequate medical care while he was incarcerated at New Castle Correctional Facility. Defendants moved for summary judgment, arguing that Mr. Miller failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before filing this lawsuit. Because factual issues preclude summary judgment for Defendants, their motions, dkts. [27], [31], are **DENIED.** The Court also **GRANTS** Mr. Miller's motion for case status, dkt. [44], to the extent that it issues this order.

## I. Summary Judgment Standard

Parties in a civil dispute may move for summary judgment, a way to resolve a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute over any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a

reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the materials cited by the parties, see Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that could be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

## II.
## Factual Background

### A. Plaintiff's Claims

Mr. Miller mailed his complaint on July 24, 2025, and it was filed with this Court on July 30, 2025. Dkt. 1. The Court's screening order allowed Eighth Amendment claims to proceed against Dr. Stephanie Riley and New Castle Warden Mark Sevier based on Mr. Miller's allegations that Dr. Riley delayed treating and scheduling surgery for a mass on Mr. Miller's throat and Warden Sevier knew about the delay but failed to exercise his authority to do anything about it. Dkt. 9.

### B. Grievance Process

Defendants designated as evidence affidavits from Grievance Coordinator Melissa Rutledge about the Indiana Department of Correction ("IDOC") and New Castle's grievance process. *See* Dkts. 27-1, 33-1. During the relevant time, the IDOC had a standardized Offender Grievance Process that allowed inmates to resolve concerns and complaints related to their conditions of confinement. Dkt. 33-1 ¶¶ 4–5; *see* dkt. 33-2 (Offender Grievance Process). To fully exhaust a grievance, an inmate had to timely complete each step of the Grievance Process using the proper grievance forms. Dkt. 33-1 ¶ 4.

During the relevant period, the Grievance Process consisted of three steps: (1) submitting a formal grievance on the required form within 10 days of the incident being grieved; (2) submitting a Level 1 appeal, or a written appeal to the facility Warden/designee within 5 days of receiving an unsatisfactory response; and (3) submitting a Level 2 appeal, or a written appeal to the Department

Offender Grievance Manager within 5 days of receiving an unsatisfactory response. *Id.*, ¶ 5; dkt. 33-2 §§ X–XII.

After an inmate submits a formal grievance, the grievance specialist must return a copy of the grievance to the inmate with a "received" stamp within 2 business days. Dkt. 35-2 at 3 (Executive Directive # 25-24). Grievance specialists must review the grievance within 10 business days of stamping it as "received." *Id.* If an inmate does not receive a response within 30 business days of receiving the date stamped copy of the grievance form, the inmate may file an appeal as though the grievance had been denied. *Id.* at 4.

Ms. Rutledge's affidavit states that inmates do not have to ask anyone for grievance forms. Dkt. 33-1 ¶ 15. They are available in the law library and can be requested from case workers and unit team managers. *Id.*

**C. Plaintiff's Attempts at Exhaustion**

Ms. Rutledge is the custodian of all offender grievance records at New Castle. *Id.*, ¶¶ 7–8. She found that Mr. Miller filed two grievances related to medical care for his throat, neither of which were appealed. *Id.*, ¶¶ 10–12; *see* dkts. 33-4, 33-5.

First, on June 26, 2026, Mr. Miller filed a grievance against "the medical department," complaining about the delay in treating his painful throat condition. Dkt. 41-1 at 33. This was marked as received on June 27 and assigned Grievance Number 25-218915. *Id.* On June 30, Ms. Rutledge returned the grievance as untimely, stating that it complained about an incident that had occurred more than 10 days before Mr. Miller filed the grievance. *Id.* at 37. Mr.

Miller's affidavit states that he submitted a revised grievance on July 1 along with a letter to Ms. Rutledge that he was grieving an ongoing condition. Dkt. 40 ¶¶ 17–18. He made copies of the grievance and the letter, which he attached as exhibits. Dkt. 41-1 at 11, 13. Mr. Miller never received a stamped copy of his renewed grievance, nor did he receive a response to it. Dkt. 40 ¶¶ 20–22.

The second grievance Ms. Rutledge had a record of is Mr. Miller's July 24, 2026, grievance stating that he had filed multiple medical requests about the growth in his throat but had yet to receive the recommended medical care. Dkt. 33-4 at 3. This was marked as received on July 24 and assigned Grievance Number 25-225060. *Id.* Ms. Rutledge responded on October 1 that Mr. Miller had been seen by the medical provider and scheduled for surgery. *Id.* at 1. Mr. Miller marked "agree" on the response form and did not appeal. *Id.*

Mr. Miller's affidavit states that on July 9, 2025, he submitted a grievance complaining about his interaction with Warden Sevier the day before. Dkt. 36 ¶ 7. Mr. Miller never received a stamped copy of the grievance. *Id.* ¶ 8. He then submitted another grievance and a letter to Ms. Rutledge on July 14, complaining about not receiving a stamped copy of the July 9 grievance. *Id.* ¶¶ 9–10. Mr. Miller never received a response to either grievance. *Id.* ¶¶ 14, 16.

## III. Discussion

The PLRA requires prisoners to exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they

allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

While the exhaustion requirement is strict, it "hinges on the availability of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Id.* The availability requirement "has teeth." *Smallwood v. Williams*, 59 F.4th 306, 313 (7th Cir. 2023). "The PLRA exhaustion requirement does not demand the impossible . . . [r]emedies that are genuinely unavailable or nonexistent need not be exhausted." *Id. Ross v. Blake* identified "three kinds of circumstances in which an administrative remedy, although officially on the books," is not "available": (1) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use," such as when no ordinary prisoner can discern or navigate it; or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation." 578 U.S. at 643−44. "Because exhaustion is an affirmative defense," Defendants face the burden of establishing that "an administrative remedy was available and that [Plaintiff] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

Defendants initially argued that Mr. Miller failed to exhaust his administrative remedies by not filing any grievances related to his claims against them. Dkts. 28, 32. Mr. Miller then designated contrary evidence with his responses that he submitted grievances against Warden Sevier on July 9 and July 16 and that he submitted grievances against Dr. Riley on June 26 and July 1. Warden Sevier did not file a reply. Dr. Riley replied that Mr. Miller's June 26 grievance was not properly exhausted because it was rejected as untimely. Dkt. 42 at 4–5. The reply does not address Mr. Miller's testimony that he submitted another grievance related to the ongoing delay in his medical care on July 1. Dr. Riley instead argued that the fact that the July 24 grievance was resolved, and not appealed, shows that Mr. Miller did not exhaust the available administrative procedures. *Id.* at 5–6.

Mr. Miller's designated evidence shows two factual issues that prevent the Court from granting summary judgment for Defendants on the issue of exhaustion. *See Johnson v. Advocate Health and Hospitals Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) ("As we have said many times, summary judgment cannot be used to resolve swearing contests between litigants.").

First, Mr. Miller has designated evidence that he submitted grievances against Warden Sevier on July 9 and July 14. Warden Sevier does not argue that

Mr. Miller should have appealed these grievances to the final level, and Ms. Rutledge's failure to provide stamped copies of the grievances or responses could show that the Grievance Process was a "dead end." *Ross*, 578 U.S. at 644; *see Smallwood*, 59 F.4th at 314 (citing *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018)) (explaining that the grievance procedure can operate as a "dead end" even "in the absence of affirmative misconduct by prison officials."). "When prison officials fail to timely respond to a prisoner's grievances, for example, administrative remedies are unavailable." *Jones v. Lamb*, 124 F.4th 463, 468 (7th Cir. 2024) (citing *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005)) (reversing summary judgment for prison officials when they failed to respond to the prisoner's grievances within the time proscribed in the grievance policy or notify him of a delay).

Second, Mr. Miller designated evidence that he submitted a corrected grievance related to Dr. Riley's medical care on July 1 after Ms. Rutledge returned the June 26 grievance as untimely. As with the grievances against Warden Sevier, the fact that Mr. Miller did not receive a stamped copy or a response within the given time frame could show that the Grievance Process was not available.

Because Mr. Miller's affidavit states that he filed those grievances before filing the lawsuit, Defendants are not entitled to summary judgment on exhaustion, and the Court does not address Mr. Miller's July 24 grievance.

Defendants have the burden of proving that the Grievance Process was available to Mr. Miller as a matter of law. They have not met their burden, so Defendants are not entitled to summary judgment on the exhaustion defense.

**IV. Rule 56(f) Notice and Further Proceedings**

The motion for case status, dkt. [44], is **GRANTED** to the extent that the Court issues this order.

For the reasons stated above, Defendants' motions for summary judgment, dkts. [27], [31], are **DENIED**. Moreover, neither Defendant responded to Mr. Miller's evidence that he never received stamped copies back of the relevant grievances that he submitted. The Court therefore gives the Defendants notice under Rule 56(f)(1) of its intent to grant summary judgment in Plaintiff's favor on the issue of exhaustion. The Defendants have **through November 6, 2026,** to show cause why summary judgment should not be granted in Mr. Miller's favor on exhaustion.[1] Alternatively, the Defendants may withdraw their affirmative defense by this date.

**SO ORDERED.**

Date: 10/9/2026

James Patrick Hanlon

James Patrick Hanlon
United States District Judge
Southern District of Indiana

---

[1] The Entry Directing Development of Exhaustion Defense and Issuing Partial Stay, dkt. 19, states that "if Plaintiff responds with evidence that the administrative remedy process was unavailable, the movant may and should consider whether selecting one of the other two options outlined above is the appropriate course—that is, conceding that a *Pavey* hearing is necessary or withdrawing their affirmative defense. Alternatively, the reply must directly confront the plaintiff's evidence regarding availability and explain why summary judgment is warranted despite that evidence." Thus, if Defendants intend to provide evidence to contradict Mr. Miller's affidavits, they must show cause why such evidence should not be considered untimely.

Distribution:

ARTHULA MILLER
135730
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Benjamin Daniel Ice
Barrett & McNagny
bdi@barrettlaw.com

Joseph Thomas Lipps
BBFCS ATTORNEYS
jlipps@bbfcslaw.com